UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 23 CR 372-13 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| DEMORRIS HILL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Defendant Demorris Hill ("Hill") was charged with one count of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1) (Count VI) in a June 2024 superseding indictment. Before the Court is Hill's motion to quash his arrest and suppress evidence and statements [435]. For the following reasons, the Court denies Hill's motion.

I. **BACKGROUND**

A. **Factual Background**

The Court relies on the following facts as represented by the parties in their briefing and during oral argument on the instant motion.[1]

In or about May 2022, federal agents and the Chicago Police Department ("CPD") initiated an investigation into Terrance Sanders ("Sanders"), who law enforcement identified as a leader of a suspected drug trafficking organization ("DTO") comprised of members of the Traveling Vice Lords street gang. This DTO is alleged to have operated an open-air drug market on the West Side of Chicago. On June 8, 2023, law enforcement obtained a court order authorizing the interception of

---

[1] The Court declined to hold an evidentiary hearing because no issues of material fact are in dispute. *See United States v. Brown*, 483 F. App'x 289, 291 (7th Cir. 2012).

phone calls made to and from a phone number belonging to Sanders for a period of 30 days. (Dkt. 451 at *2.)

On June 9, 2023, law enforcement conducted surveillance on Sanders near a gas station located at the corner of 1600 West Van Buren in Chicago ("Gas Station A"). Surveillance video footage reveals that on June 9, 2023 at approximately 11:18 AM, a black GMC Sierra pickup truck, which the Government later learned was registered to a company of which Hill is the registered agent and manager, entered the gas station parking lot. Surveillance footage shows an individual, who the Government identifies as Hill after his arrest more than one week later, exiting the GMC Sierra pickup truck and entering Gas Station A's minimart. Shortly after, Sanders arrived at Gas Station A in a silver Chevy Malibu, exited the vehicle, and entered the minimart. Surveillance video footage from inside Gas Station A shows the individual who the Government identifies as Hill removing an object from the front pocket of his sweatshirt and handing it to Sanders, Sanders placing the object in his pants pocket, and the two leaving the minimart. The Government alleges that video footage of the minimart's front entrance shows Sanders handing Hill an object, which Hill placed in his pocket. Officers believed that a narcotics transaction had taken place.

On June 16, 2023, at approximately 8:29 A.M., law enforcement intercepted an outgoing phone call made by Sanders to Hill. During the call, Sanders asked Hill about purchasing black tar heroin, asking "where that black shit at that you had gave me?" and stating his intent to potentially purchase that heroin. Hill informed Sanders that he planned to meet a third party to obtain the black tar heroin for Sanders. At approximately 9:04 A.M., law enforcement then intercepted an incoming call to Sanders from Hill, during which Hill and Sanders agreed to meet at a specific gas station on Chicago's West Side ("Gas Station B"). The remainder of the discussion indicated that Sanders planned to meet Hill after Hill received the narcotics from the third party.

Approximately 15 minutes later, law enforcement observed Hill's GMC Sierra pickup truck near Gas Station B. About two minutes later, a white Toyota sedan parked directly behind Hill's truck. Hill then exited his truck, entered the front passenger seat of the Toyota sedan and exited the Toyota sedan some minutes later. Around the same time, law enforcement observed a Dodge Durango belonging to Sanders driving in the area of Gas Station B.

Shortly thereafter, at approximately 9:30 A.M., CPD officers approached Hill in an unmarked vehicle to conduct an investigatory stop. As officers approached, Hill began to run in another direction. While in pursuit, officers observed Hill stop at the intersection of Harrison and Lawndale streets, remove unknown items from his front waistband, and drop the items into a sewage drain through a hole in a manhole cover in the middle of the street. Officers detained Hill while he was lying down on the street near the manhole cover. Upon removal of the manhole cover moments later, law enforcement recovered two knotted plastic bags. Laboratory testing confirmed the presence of heroin in one bag and fentanyl in the other.

Hill was placed under arrest and verbally waived his *Miranda* rights, agreeing to be interviewed by the police. During his custodial interview, Hill told law enforcement that had been delivering the baggies to an individual named "Rocklord," which law enforcement understood to be one of Sanders's nicknames. Hill described himself as the "middleman" of a narcotics transaction with Sanders and stated, among other things, that he had been tasked with retrieving heroin product from his supplier to deliver to Sanders.

Shortly after Hill was detained, law enforcement intercepted an outgoing call made by Sanders to an unidentified individual. While waiting for the call to be answered, Sanders described officers' pursuit and arrest of Hill to another unidentified individual in the background.

### B. Procedural History

On August 30, 2023, a federal grand jury indicted Hill of knowingly and intentionally possessing with intent to distribute a quantity of heroin (a Schedule I Controlled Substance) and fentanyl (a Schedule II Controlled Substance), in violation of 21 U.S.C. § 841(a)(1). On June 12, 2024, a superseding indictment was returned charging Hill with the same offense. (Dkt. 300.) Hill moves to quash his arrest and suppress all evidence and statements resulting from his arrest.

## II.   <u>DISCUSSION</u>

Hill moves to quash his arrest and suppress all evidence collected and statements made after his arrest. The Court addresses each issue in turn.

### A. Officers' Stop and Seizure of Hill

Hill contends that law enforcement lacked a justifiable basis to pursue Hill on foot, stop him, and investigate him because they lacked reasonable suspicion to believe Hill had committed a crime or was about to commit a crime. Hill argues that he was not the subject of any investigation prior to his arrest, had not been identified by law enforcement prior his arrest, and was not with any individual who was the subject of an investigation at the time of his arrest. The Government argues that officers had reasonable suspicion to stop Hill, and in any event, did not need reasonable suspicion to approach Hill because the Fourth Amendment is only implicated once there is a seizure.

The Supreme Court has established that not all personal interactions between law enforcement and citizens are impermissible. *Terry v. Ohio*, 392 U.S. 1, 9 (1968). Police officers may briefly detain individuals for certain investigatory purposes. (*Id.*) To justify this type of investigative stop, referred to as a Terry stop, an officer must identify specific and articulable facts that, when taken together with natural inferences, give rise to a reasonable suspicion that a person has committed or is committing a crime. *See id.* at 21; *United States v. McCarthur*, 6 F.3d 1270, 1275 (7th Cir. 1993). Whether an officer has reasonable suspicion is based upon "the totality of the circumstances" and "common-sensical

judgments and inferences about human behavior." *Jewett v. Anders*, 521 F.3d 818, 823–24 (7th Cir. 2008) (quoting *United States v. Baskin*, 401 F.3d 788, 791 (7th Cir. 2005)).

An arrest occurs when, under the relevant circumstances, a reasonable person believes that he is not free to leave. *Adams v. Szczerbinski*, 329 Fed. Appx. 19, 24 (7th Cir. 2009). An arrest must be supported by probable cause, which requires an arresting officer to "possess knowledge from reasonably trustworthy information that would lead a prudent person to believe that a suspect has committed a crime." *United States v. Hill*, 2013 WL 3283833, at *3 (N.D. Ill. Jun. 28, 2013) (Coleman, J.) (quoting *United States v. McCauley*, 659 F.3d 645, 649 (7th Cir. 2011)) (internal quotations omitted). Whether probable cause exists is a "commonsense, practical question," the answer to which is based on the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230 (1983).

Here, Hill was not detained until he submitted to officers while lying on the ground, after having discarded the bags of narcotics down the sewer through the hole in the manhole cover. *See California v. Hodari D*, 499 U.S. 621, 626 (1991) (holding that a seizure requires either physical force or submission to authority); *United States v. Griffin*, 652 F.3d 793, 801 (7th Cir. 2011) ("Simply put, a seizure effected by a show of authority occurs when the suspect submits."). The Government is correct that there was no seizure until Hill submitted to officers while on the ground. (Dkt. 451 at *11.) *See United States v. Wilson*, 963 F.3d 701, 703 (7th Cir. 2020) (holding that "submission is a must"). Because a defendant's flight does not constitute a seizure, the Fourth Amendment was not implicated while Hill was running away from the police, at which time he paused to discard the narcotics. *See id.* As a result, officers did not need any level of suspicion to approach or pursue Hill. *See Florida v. Royer*, 460 US. 491, 497 (1983) (holding that officers do not violate the Fourth Amendment by merely approaching an individual in a public place).

Second, the Court agrees with the Government that prior to stopping Hill, officers had reasonable suspicion that Hill had committed or was about to commit a crime. Law enforcement

5

overheard in two recorded calls Sanders's negotiation of a heroin transaction scheduled to take place at Gas Station B; observed Hill acting in a manner consistent with that transaction, including arriving at Gas Station B at the pre-arranged time (*i.e.*, one hour after the first recorded call) and meeting with a third party; observed Sanders's vehicle circling Gas Station B while Hill was meeting with the third party; saw Hill immediately flee upon being approached by officers; and witnessed Hill discard an item or items down a sewage drain. Even if Hill had not been identified as a target of the investigation, the totality of the circumstances, including the collective knowledge of officers, demonstrate that officers had reasonable suspicion that Hill was engaged or about to engage in a heroin transaction. Hill emphasizes that before stopping him near Gas Station B, law enforcement did not know Hill's actual identity, had not identified Hill's voice on the intercepted call with Sanders, and was not aware that the GMC pickup truck at Gas Station A was registered to Hill's company. Despite this, Hill cites no case law standing for the notion that knowledge of any single one, or all, of these details is necessary to establish reasonable suspicion. Indeed, it appears antithetical to decades of case law on the doctrine.

Lastly, Hill argues, for the first time at oral argument, that he was unlawfully seized at the moment officers drew their guns, *before* Hill disposed of the narcotics into the hole of the sewer's manhole cover. It is widely understood that any argument not raised in briefing is waived. *See Carroll v. Lynch*, 698 F.3d 561, 564 n.2 (7th Cir. 2012) (argument cursorily raised in reply brief for first time waived); *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 650 (7th Cir. 2011) ("underdeveloped argument" waived). Similarly, any argument raised for the first time at oral argument and not incorporated into a party's briefing is waived. *See Wonsey v. City of Chicago*, 940 F.3d 394, 398-99 (7th Cir. 2019); *In re Dorner*, 343 F.3d 910, 915 (7th Cir. 2003) ("Lawyers must get these things straight before the briefing is complete; otherwise the opposing party and the appellate judges must traverse the same ground twice."). That Hill failed to raise this argument in briefing is alone a basis to justify the Court's rejection of it.

In addition to defense counsel's oversight in that regard, Hill neglected to file or send the Court a copy of the video footage on which it relies to make this very argument regarding unlawful seizure. Only after the Court viewed the video at oral argument during Hill's presentation, and then almost one month later emailed defense counsel for a copy of the video, did defense counsel hand deliver a flash drive storing the relevant video. But the Court is not responsible for ensuring that parties make timely and complete submissions, including exhibits with supporting evidence. And for many of the same reasons, the Court is not responsible for the parties' omissions. The Court disregards the untimely submitted videos.[2]

## B. Admissibility of Narcotics

In support of his motion, Hill argues that the narcotics he discarded down the manhole cover while running from law enforcement are inadmissible because his abandonment of such narcotics was involuntary and the product of or response to unlawful police misconduct. The Government contends that exclusion of the narcotics is unwarranted because (1) Hill abandoned any privacy interest in the narcotics after voluntarily discarding the bags containing narcotics into a sewage drain through a hole in a manhole cover in the middle of a public street; and (2) law enforcement would have inevitably recovered the bags containing narcotics.

It is well established that abandoned property is not subject to Fourth Amendment protection, which "only extends to places and items for which a person has a reasonable expectation of privacy, and no person can have a reasonable expectation of privacy in an item that he has abandoned." *United*

---

[2] Even if the Court were to consider the relevant video, it shows that Hill discarded the bags of narcotics in the sewer through a manhole cover *before* he submitted to authority (*i.e.*, before he was seized). (*See* Video No. X60A1244C, submitted to Court on Aug. 4, 2025.) Additionally, it is well established that "there is no seizure if an officer's show of force does not either physically touch the individual or compel him to submit to the officer's authority." *Cabell v. Rousseau*, 130 Fed. Appx. 803, 807 (7th Cir. 2005) (citing *California v. Hodari D.*, 499 U.S. 621, 626-27, 113 L. Ed. 2d 690, 111 S. Ct. 1547 (1991)). Even with officers' guns drawn, Hill did not submit to authority before discarding the narcotics.

*States v. Basinski*, 226 F.3d 829, 836 (7th Cir. 2000). The Court must look at the totality of circumstances to determine whether a reasonable person in the position of officers would believe that the defendant relinquished his property interests in the seized item. *Id.* at 836–37. According to the Seventh Circuit, one of the archetypical cases of abandonment involves "a fleeing defendant who relinquishes an object to make his flight easier or because discarding the item might make it easier for him to later claim that he never possessed it." *Id.* at 837. That the defendant has disposed of the property in a location easily accessible to the public lends to the reasonable belief that the defendant has abandoned his interest in the property. *Id.*

The Court finds that Hill voluntarily abandoned all possessory interest in the bags of narcotics when he dropped them down the sewer after fleeing from police officers. At oral argument, Hill described three general types of abandonment, one of which occurs when an individual throws an item "into the open" where the publicly readily has access to it. That is precisely what occurred here. Hill had no expectation of privacy beneath the manhole cover in the sewer, which was located on a public street, and thus no Fourth Amendment protections extended to the evidence recovered from the sewer. The Court rejects Hill's ridiculous assertion that a sewer beneath a manhole cover is a concealed area where one would have a reasonable expectation of privacy.

Hill has cited nothing to suggest that his abandonment of the narcotics occurred in response to unlawful police conduct. The two out-of-circuit cases that he cites, *Gordon v. State*, 4 S.W.3d 32 (Tx. App. 1999) and *Wingate v. State*, 764 S.E.2d 833 (Ga. 2014), involve instances in which the defendants were detained *prior* to their disposal of the recovered property. In contrast, officers stopped Hill *after* his abandonment of the narcotics. As such, Hill's abandonment of the narcotics could not have been in reaction to any purported unlawful stop and seizure by law enforcement.

Because Hill's abandonment of all interest in the narcotics renders such evidence admissible, the Court need not consider the applicability of the inevitable discovery doctrine.

8

### C. Admissibility of Statements

Lastly, Hill seeks to suppress statements elicited after the traffic stop under the exclusionary rule, which renders inadmissible evidence obtained and statements made as a result of an illegal search or seizure. *See Mapp v. Ohio*, 367 U.S. 643, 654 (1961); *Terry*, 392 U.S. at 29. Because this Court concludes that officers had reasonable suspicion to stop Hill, and had probable cause to arrest Hill after recovering the narcotics from the sewer, the fruits of the stop and subsequent arrest are admissible.

Hill also alleges in passing that he was "questioned without the benefit of counsel." (Dkt. 435 at *4.) A statement made by a defendant without the presence of counsel, alone without more, however, does not necessarily warrant its exclusion. While the Government has the burden to show as a "'prerequisite' to the statement's admissibility as evidence . . . that the defendant 'voluntarily, knowingly, and intelligently waived his rights,'" *J.D.B. v. North Carolina*, 564 U.S. 261, 269–70 (2011) (quoting *Miranda v. Arizona*, 384 U.S. 436, 475 (1966)), Hill makes no allegation that law enforcement did not read to him, or that he did not understand, his Miranda rights. The Court thus will not entertain such an argument.

## III.   **CONCLUSION**

For the foregoing reasons, the Court denies Hill's motion [435].


**IT IS SO ORDERED.**

Sharon Johnson Coleman
United States District Judge

DATED: 8/8/2025

9